**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
_____

**DENT DOCTOR, INC.,**
                          **Plaintiff,**

**v.**                                                                         **Case No. 14-CV-1112**

**DENT CLINIC, INC. and**
**MIKE HENNEBERRY,**
                          **Defendant.**
_____

## ORDER

This is a breach of contract and trademark infringement action. Plaintiff operates auto dent repair franchises under the name "Dent Doctor" throughout the United States. Defendants operated a Dent Doctor franchise from 1993 to 2012, when the parties entered into a Franchise Termination Agreement ("Termination Agreement"). Plaintiff alleges that defendants continue to use the Dent Doctor mark and requests a preliminary injunction prohibiting such use.

In its complaint, plaintiff alleges the following unauthorized uses of its marks: (1) use of a pick-up truck and business cards with the DENT DOCTOR trademark and logo, (2) use of the term DENT DOCTOR on defendants' website and in advertising, and (3) use of the term DENT DR on defendants' website and in advertising. Defendants concede that they failed to remove plaintiff's logo from their pick-up truck and their business cards in a timely manner but state that they have since removed the logo from the truck and replaced their business cards. Henneberry Decl. at 10. Defendants also assert that they have removed the term DENT DOCTOR from their website. Defendants, however, have replaced the term Dent Doctor on their truck cards and website with the term DENT DR.,

and the dispute in this case involves that term.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain a preliminary injunction, plaintiff must first make a threshold showing that (1) it has a likelihood of success on the merits, (2) it has no adequate remedy at law, and (3) it will suffer irreparable harm if a preliminary injunction is denied. *Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If plaintiff makes this preliminary showing, I must consider whether a preliminary injunction will harm the public interest and balance the irreparable harm plaintiff will suffer without injunctive relief with the harm defendants will suffer if the preliminary injunction is granted. *Id.* I use a sliding scale to weigh the balance of harms; the greater the likelihood of success on the merits, the less harm the injunction must prevent in order for preliminary relief to be warranted. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

Plaintiff can establish that it is likely to succeed on the merits by showing that its chances of prevailing are better than negligible. *Omega Satellite Prods. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982). To demonstrate a likelihood of success on its infringement claim, plaintiff must establish that it owns a protectable mark and that a "likelihood of confusion" exists between the marks or products of the parties. *Meridian Mut. Ins. Co. v. Meridian Ins. Group*, 128 F.3d 1111, 1115 (7th Cir. 1997).

I first consider whether plaintiff has rights to the DENT DOCTOR mark. A certificate of registration from the USPTO is prima facie evidence of the validity of the registration, ownership of the mark, and exclusive right to use the mark throughout the nation. 15

U.S.C. § 1057(b), 1115(a). However, trademark rights are acquired through commerce and not through discovery, registration, or invention of the mark. *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). Thus, even a federally registered trademark is subject to previously established common law trademark rights. *Id.* The party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it. *Johnny Blastoff, Inc. v. L.A. Rams Football Co.*, 188 F.3d 427, 434–35 (7th Cir. 1999). However, these superior rights are limited to the geographic area in which the continuous prior use is proved. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 104 (7th Cir. 1970).

Plaintiff has registered several federal trademarks related to the DENT DOCTOR mark. In 1989, it registered its "DENT DOCTORX: The Prescription for Paintless Dent Repair" logo.  In 1999, it registered its "DENT DOCTORX" logo without the tagline.  In 2005, it registered the mark "WWW.DENTDOCTOR.COM."  Finally, in November 2012, it registered the mark "DENT DOCTOR."  This 2012 trademark registration "consists of standard characters without claim to any particular font, style, size, or color." *Id.* However, defendants argue that they have obtained licensing rights to use the mark DENT DOCTOR and DENT DR from Dent Doctor Auto Specialists, Inc. ("Auto Specialists"), a company in Augusta, WI, that has used the term "Dent Doctor" since 1984. The licensing agreement is retroactive to January 1, 2012.

It appears that Auto Specialists does possess superior rights to the term DENT DOCTOR, despite plaintiff's various federal trademark registrations. Auto Specialists has used the term "Dent Doctor" since it was founded in 1984, and it is engaged in a similar,

if not identical, business as plaintiff. These superior rights however are limited to the geographical area that Auto Specialists served at the time plaintiff obtained its federal trademark. Plaintiff argues that it obtained its first federal trademark in 1989, and that Auto Specialists' superior rights should be limited to the geographical area it served then, which almost certainly did not include southern Wisconsin where defendants operate. However, plaintiff's 1989 trademark registration was for their "DENT DOCTORX: The Prescription for Paintless Dent Repair" logo, not the general term "Dent Doctor." Plaintiff did not register the DENT DOCTOR mark until November 2012. Thus, Auto Specialists' superior rights to the term "Dent Doctor" are limited to the geographical area it served in November 2012. Auto Specialists claims to do business throughout much of southern Wisconsin, attracting customers through its website www.dent-doctor.net and regularly servicing customers from Milwaukee, Janesville, Madison, and the Fox Valley. Plaintiff points out that Auto Specialists is located 220 miles (over 3 hours) away from defendants' location, and it asserts that "[c]ustomers seeking minor dent repair simply do not drive that distance." Pl.'s Reply Br. at 1; Harris Decl. at 2 ("In general, most of [plaintiff's] business is generated from customers who live or work within twenty miles of our location."). Despite these conflicting statements, plaintiff's chances seem better than negligible of showing that customers seeking minor dent repair do not travel over 200 miles to use Auto Specialists' services and thus, that Auto Specialists' superior rights do not extend to Waukesha or greater southern Wisconsin where defendants' operate.

Defendants argue that even if Auto Specialists does not have superior rights in the Waukesha area, plaintiff is still not likely to succeed because it cannot show that DENT DOCTOR is a protectable mark. Specifically, they argue that the term is generic or

descriptive. There are five general categories of marks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Generic marks "refer to the genus of which the particular product is a species" and are not registrable as trademarks. *Id.* (internal quotation and citation omitted). Descriptive marks are not inherently distinctive and therefore cannot be protected; however, descriptive marks can acquire the distinctiveness or secondary meaning required to be protected under the Lanham Act. *Id.* at 769. A suggestive mark "suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods." *G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 992 (7th Cir. 1989) (internal quotation and citation omitted). A suggestive mark is protectable.

Plaintiff's federal registration of the term DENT DOCTOR is prima facie evidence that it is not generic or descriptive, especially considering that the USPTO did not require plaintiff to show proof of secondary meaning. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 301 (7th Cir. 1998). Further, the term "doctor" generally connotes "healing," while plaintiff uses the term "doctor" to connote "repair," requiring some imagination to deduce that "healing" applies to dent "repair." *See Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 172 (4th Cir. 2006) (finding the term GLASS DOCTOR to be suggestive "because the use of imagination is essential to an understanding of the real meaning behind" the mark). Thus, I conclude that plaintiff is likely to succeed in showing that its mark is protectable.

Next, I consider whether there is a likelihood of confusion between the parties' services. In doing so, I consider seven factors: (1) the similarity between the marks in

appearance and suggestion; (2) the similarity of the products; (3) the area and manner of

concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the

strength of plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to

"palm off" his service as that of another. *Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th

Cir. 2008). Although no single factor is conclusive, the similarity of the marks, the

defendant's intent, and the actual confusion are particularly important. *Id.*

The first two factors weigh heavily in favor of plaintiff. The mark defendants continue

to use, DENT DR, is simply an abbreviated version of plaintiff's mark DENT DOCTOR, and

the marks sound the same when spoken. *See Stockdr.com, Inc. v. Davis*, 2002 WL

1787938 at *3 (T.T.A.B. Aug. 1, 2002) (finding STOCKDR.COM and STOCKDOCTOR to

be "virtually identical"); *In re Jonas*, 2003 WL 21267819 at *2 (T.T.A.B. May 29, 2003)

(finding JOB DOCTOR and THE JOB DR. "almost indistinguishable" because the marks

look alike, sound alike, and have the same suggestive connotations). And the parties seem

to concede that their services are virtually identical; paintless dent repair on automobiles.

Consumers searching for such services are probably not likely to put a great deal of

research into a relatively minor car repair like dent removal. Plaintiff puts forward some

evidence of the strength of their mark, specifically that it has been used in commerce since

1986, and that it has continuously used and advertised its mark since then. Finally,

confusion is also particularly likely because defendants used to be affiliated with plaintiff

as a franchisee, and customers may not realize they no longer are affiliated. Based on

these factors, I conclude that plaintiff is likely to succeed in showing a likelihood of

confusion and, therefore, that plaintiff's chances of success on the merits of its trademark

infringement claim are better than negligible.

I also conclude that plaintiff is likely to succeed on its breach of contract claim. Specifically, the parties' Termination Agreement reads, "Franchisee agrees to cease to operate the Franchised Business, at any and all locations, using the Proprietary Mark 'DENT DOCTOR ®' on or before October 25, 2012, and shall not thereafter, directly or indirectly, represent to the public that the Franchisee is a Dent Doctor Franchise or hold itself out as a present or former Franchisee." Henneberry Decl. Ex. I. It further states that "[f]ranchisee shall immediately and permanently cease to use, in any manner whatsoever, the Mark 'DENT DOCTOR ®' . . . Franchisee shall immediately and permanently cease advertising the mark 'DENT DOCTOR ®' in any form and in any advertising medium and shall obtain a new business name." Henneberry Decl. Ex. I. Plaintiff argues that defendants' continued use of DENT DR violates this agreement, and that the retroactive licensing agreement with Auto Specialists does not undo the parties' Termination Agreement.

Defendants agreed to cease using the term DENT DOCTOR "in any form." Plaintiff is likely to succeed in convincing the factfinder that DENT DR is "a form" of DENT DOCTOR. The fact that plaintiff did not federal register the term DENT DOCTOR until after the parties signed the Termination agreement is irrelevant; the language of the contract prohibits use of the term regardless of whether plaintiff had registered the term. Thus, plaintiff is likely to succeed on its breach of contract claim as well as its infringement claim.

Next, I consider whether plaintiff has shown that it has no adequate remedy at law and that it will be irreparably harmed absent preliminary relief. The law presumes that injuries arising from trademark infringement are irreparable. *Abbott Labs. v. Mead Johnson*

7

*& Co.*, 971 F.2d 6, 16 (7th Cir. 1992). This is because the "most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (internal quotation and citation omitted). The presumption is also founded upon the judgment that "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Abbott*, 971 F.2d at 16. In this case, this presumption is strengthened by the Termination Agreement, in which defendants stipulated that a violation of the agreement "would result in irreparable injury to Franchisor for which no adequate remedy at law may be available." Henneberry Decl. Ex. I. Plaintiff further supports its claim of irreparable injury by asserting that "potential franchisees have not wanted to enter the Wisconsin market until the former locations operated by [defendants] stop using the Dent Doctor trademark." Harris Decl. at 4.

Defendants argue that plaintiff's assertion about potential franchisees is conclusory and that plaintiff has failed to show evidence of an actual potential franchisee who refuses to enter the Wisconsin market because of defendants' use of DENT DR. It also argues that because plaintiff has misrepresented franchise information in its annual filings with the State of Wisconsin, it is ineligible to franchise in the state and therefore not at risk of suffering irreparable harm. However, I find that defendants' evidence of misrepresentations is not enough to overcome the presumption of irreparable harm as well as defendants' own stipulation to irreparable harm.

I must now balance the benefit to plaintiff against the potential harm an injunction would do to defendants. Because plaintiff's chances of succeeding on at least its breach of contract claim seem particularly high, the level of irreparable harm plaintiff must show is diminished. If I grant an injunction, defendants will need to adopt a new mark and update their promotional materials, signs, website, vehicles, and business cards. If it turns out that they were wrongfully enjoined, they will have needlessly risked losing sales opportunities and the goodwill of their customers. Defendants have been in operation since at least 1993, and thus appear to be an established dent repair service in southern Wisconsin. Plaintiff, on the other hand, has been using and franchising its trademark nationally since 1989. It does not currently operate any franchises in Wisconsin, although it claims this is at least partially due to defendants' use of their mark. Weighing in plaintiff's favor is the fact that defendants knew about plaintiff's DENT DOCTOR mark and agreed to stop using it "in any form." *Ty, Inc.*, 237 F.3d at 903 ("In assessing Defendant's irreparable harm, the court excludes the burden it voluntarily assumes by proceeding in the face of a known risk." (quotation omitted)). The public interest also weighs in favor of granting the injunction based on the fact that since 1993, defendants were a DENT DOCTOR franchisee, and the continued used of DENT DR may lead to consumer confusion. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813–14 (7th Cir. 2002). Thus, I believe the benefit of an injunction is greater than the harm it will cause.

Defendants argue that even if plaintiff shows cause for a preliminary injunction, I should not grant it because plaintiff has unclean hands. The unclean hands doctrine "just means that equitable relief will be refused if it would give plaintiff a wrongful gain." *Scheiber*

*v. Dolby Labs., Inc.*, 293 F.3d 1014, 1021 (7th Cir. 2002). The misconduct does not need to rise to the level of a crime to justify application of the unclean hands doctrine; "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945). However, "the doctrine is not to be used as a loose cannon, depriving plaintiff of an equitable remedy to which he is otherwise entitled merely because he is guilty of unrelated misconduct." *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 601 (7th Cir. 1986).

Defendants argue that plaintiff's misrepresentations in its franchise filings with the State of Wisconsin as well as misrepresentations it made to defendants regarding its federally registered trademarks at the beginning of their franchise relationship justify the denial of a preliminary injunction based on the doctrine of unclean hands. Even assuming that plaintiff made the misrepresentations that defendants allege, this conduct is not directly related to whether defendants are using DENT DR in violation of plaintiff's trademark rights and in breach of the parties' Termination Agreement. Thus, I will not apply the unclean hands doctrine in connection with the preliminary injunction motion.

Pursuant to Federal Rule of Civil Procedure 65©, plaintiff must post security with the court in order to cover the costs and damages to defendant in the event that defendant has been wrongfully enjoined. Because the damages caused by an erroneous preliminary injunction cannot exceed the amount of the bond posted as security, and because an error in setting the bond too high is not serious, I err on the high side when setting bond. *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000). However, I may not

simply set the bond at whatever high number I think appropriate; instead, reasons must support the number chosen. *Gateway E. Ry. Co. v. Terminal R.R. Ass'n*, 35 F.3d 1134, 1141–42 (7th Cir. 1994).

Defendants have given me no indication of the estimates of the costs or losses associated with a preliminary injunction, and thus it is impossible for me to support a bond decision. For now, I will require plaintiff to post only a modest bond. However, defendants may apply for a larger bond if they can produce evidence of the pecuniary harm they may reasonably expect to suffer on account of this injunction.

**THEREFORE, IT IS ORDERED** that defendants' motion for pre-hearing discovery is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for a preliminary injunction is **GRANTED**. The following preliminary injunction will be entered against defendants provided that plaintiff gives security by depositing with the Clerk the sum of $1,000 in a cashiers check or other certified funds within seven days of the date of this order: the defendants, their agents, or anyone else working with or on behalf of the defendants are preliminarily **ENJOINED**, directly or indirectly, from using plaintiff's trademarks, including the DENT DOCTORX logo, the term DENT DOCTOR, the term DENT DR, and other variations of the term DENT DOCTOR. Failure to provide the requisite security will cause this order to lapse of its own accord. If plaintiff provides the requisite security, this preliminary injunction shall remain in effect and the $1,000 security shall remain with the Clerk until further order of the court.

Dated at Milwaukee, Wisconsin, this 12th day of December, 2014.

s/ Lynn Adelman

_____

LYNN ADELMAN
District Judge